# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>           v.<br><br>FEREIDOUN KHALILIAN,<br>    Defendant. | 2:23-cr-331-DSF<br><br>Order DENYING Motion to Suppress Recorded Phone Calls (Dkt. 60) |

Defendant Fereidoun Khalilian moves pursuant to 18 U.S.C. § 2515 to suppress recordings of telephone calls.[1]

At issue are recordings of certain telephone calls made by alleged victim J.E. to Defendant. J.E. has admitted to investigating agents that the recordings were made when J.E., using spoofed phone numbers, called Defendant approximately 20 times during Defendant's European vacation. See Motion, Ex. A. In those calls, J.E. admitted that he would say only one or two words, such as Defendant's name, and then see if Defendant would say anything inflammatory that could be recorded. Id.

In the initial briefing, the parties appeared to agree that J.E. intended to use any recorded inflammatory statements made by Defendant in J.E.'s highly critical documentary about Defendant.

---

[1] As an initial matter, the government claims that Defendant's declaration in support of his motion to suppress is insufficient. The Court does not need to reach this argument and assumes for this purpose that it is sufficient.

Shortly before the hearing, the government produced a recent FBI 302 regarding a new interview with J.E. In that interview, J.E. stated that when he began calling Defendant, he intended to "annoy him out of boredom." Dkt. 81-1 at 4. However, J.E. also stated that he was not aware that the software he was using was making recordings of the calls. Id. J.E. claims that after he discovered this, he made repeated recorded calls to Defendant for the purpose of acquiring useful material for the documentary.

Interceptions of communications – *e.g.*, recordings – made in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III) are not generally admissible in court.

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.

However, certain interceptions do not violate Title III. The government first argues that Defendant consented to the recordings when he agreed to participate in the production of J.E.'s documentary. See 18 U.S.C. § 2510(2) ("oral communication[s]" covered by Title III defined to include only unexpected interception). This argument has little merit. The only evidence provided by the government in support of its consent argument is a phone recording memorializing Defendant and J.E.'s agreement to collaborate on J.E.'s documentary. This agreement was made four years prior to the recordings at issue, does not specify any consent to recording phone calls, and by the time the recordings at issue in the motion were made, the relationship between

2

Defendant and J.E. had disintegrated. In short, there is no reason to believe that Defendant consented to the recordings at issue.

The more relevant exception is contained in § 2511(2)(d):

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

It is undisputed that J.E. was a party to the calls at issue. Therefore, the recordings were not made in violation of Title III unless they were made "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

Defendant initially argues that he does not need to specify a particular statute or tort that J.E. intended to commit. Instead, Defendant claims he needs only to show that J.E. intended to "embarrass, harass, [or] harm him." See Mot. at 7-8.

First, this reading is not supportable based on the plain text of the statute. Section 2511(2)(d) explicitly specifies that the purpose must be to violate "the Constitution or laws of the United States or of any State." This excludes arguments based on vague "embarrassment," "harassment," or "harm" unless the purpose was to commit a recognized crime or tort. Defendant cites no authority for his broad reading of § 2511(2)(d) in his moving papers. He does provide a few citations in his reply, but, in context, it is clear that none of these cases intended to broaden § 2511(2)(d) beyond recognized crimes and torts. The cited passages were merely using broad words like "harm" as shorthand for particular crimes or torts. None of them holds that a

purpose to impose vague "harm," rather than a purpose to commit a recognized tort, is sufficient.  See, e.g., United States v. Jiau, 734 F.3d 147, 152 (2d Cir. 2013) ("The carve-out within § 2511(2)(d), which renders inadmissible consented recordings made for the purpose of perpetrating 'criminal' or 'tortious' acts, is to be construed narrowly.").

Defendant does also claim that J.E.'s purpose was to commit a recognized tort.  Defendant primarily concentrates on the California tort of commercial appropriation of name or likeness.  As noted, the parties agree that, at least for most of the recordings, J.E.'s reason for making the recordings was to use them in his documentary film.  Defendant argues that this commercial use of his identity and voice in the commercial film, without his consent, is tortious.

However, California law recognizes a "public interest" or "public affairs" exception to appropriation claims.  "Under both the common law cause of action and the statutory cause of action no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it."  Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (simplified).  This extends "to almost all reporting of recent events, as well as to publications about people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities."  Id. (simplified).

Citing various news articles, the government argues that Defendant was a person of sufficient public interest to trigger "the right of the public to know and the freedom of the press to tell" purported facts about Defendant's actions.  Defendant does not deny that his actions may be of general public interest.  Instead, he focuses on the manner in which the recordings were made: "Whether J.E. has a right to make his movie is not at issue in this motion. The issue here is whether J.E. has a right to use unconsented recordings of his anonymous calls to Mr. Khalilian in that movie."  Reply at 9.  But the manner in which the recordings were made is not relevant to either the

elements of the appropriation tort (other than possibly the lack-of-consent element) or the public interest exception to its application.

Defendant also argues that J.E.'s purpose in making the recordings was to commit the tort of intrusion of privacy. "[T]he action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 231 (1998).

Defendant provides essentially no analysis of this tort in his moving papers.[2] Other than a recitation of the elements of the tort, he adds a single sentence: "The California Supreme Court has previously held that tapping a person's telephone is an actionable intrusion." Motion at 9. This was also the only basis for an intrusion of privacy purpose given at the hearing on October 2, 2023.[3] But the recording of the call by a party to the call falls within § 2511(2)(d)'s exception to exclusion. Section 2511(2)(d) requires a separate criminal or tortious purpose for the recording irrespective of whether recording the call would normally be tortious under state law. Sussman v. Am. Broad. Companies, Inc., 186 F.3d 1200, 1202 (9th Cir. 1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law . . . .").

In his reply, Defendant shifts his argument to the offensiveness of J.E.'s manner in making the recorded calls. But this confuses the *manner* in which the recordings were made with the *purpose* for which they were made. "Under section 2511 . . . [w]here the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." Id. at 1202 (simplified). The purpose alleged by Defendant was to use the recordings in the documentary. As discussed above, that

---

[2] The government entirely ignores the argument in its opposition.

[3] Specifically, according to the rough transcript, defense counsel's sole argument was that "[t]he classic example of intrusion is calling someone and recording those phone calls." However, counsel also later admitted that the making of the recording itself cannot be the tort at issue even if it would normally be illegal under California law.

use is not, in and of itself, a tort. The manner of making the recordings may have constituted the intrusion tort, but it is not the manner of acquiring the recordings that is relevant.

Defendant argues that the Court cannot properly analyze these issues without an evidentiary hearing regarding J.E.'s purpose in making the recordings. But the only factual dispute that has been raised is whether J.E intentionally made the recordings to acquire useful material for the documentary or that J.E. was unaware that he was recording at least some of the calls. But even if the Court assumes that J.E. knowingly recorded the calls – as it has in the analysis above – Defendant has not established that the purpose for doing so would be criminal or tortious independent of J.E.'s making of the recordings themselves.[4]

The motion to suppress the recordings is DENIED.

IT IS SO ORDERED.

Date: October 4, 2023

Dale S. Fischer
United States District Judge

---

[4] Obviously, if J.E. was not even aware a call was being recorded, he could not have had any purpose for making the recording, tortious or otherwise.