UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>              v.<br><br>FEREIDOUN KHALILIAN,<br>    Defendant. | 2:23-cr-331-DSF<br><br>Order re Motions in Limine (Dkt. 59, 61) |

    Defendant Fereidoun Khalilian moves in limine to prevent the government from referring to the alleged victim in this case as "the victim." The government moves in limine to allow discussion of the topics presented in the alleged victim J.E.'s documentary.

<u>Victim MIL</u>

    Consistent with the weight of authority, the Court will grant limited permission for J.E. to be referred to by the government as "the victim." <u>See</u> <u>United States v. Gibson</u>, 690 F.2d 697, 703 (9th Cir. 1982) (use of "victim" by prosecutor was "fair comment on the evidence"); <u>United States v. Bazar</u>, 747 F. App'x 454, 458 (9th Cir. 2018) (unpublished) ("The prosecutor's use of the term 'victim' merely summarized the government's legitimate theory of the case."). The jury will be well aware that it is the position of the government that J.E. is a victim of a crime and the Defendant was the perpetrator of that crime. The government may refer to J.E. as the victim when it first mentions J.E. during its opening statement and may refer to J.E. as the victim in its closing argument. If Defendant provides a proposed instruction, on the first use of "victim," the Court can give an

admonishment that Defendant is to be assumed innocent until proven guilty.

The Court will refer to the alleged victim as J.E. or by his full name.

Discussion of the Topics Contained in the Documentary

The government moves to admit testimony regarding the topics covered by J.E.'s documentary based on the government's theory that J.E.'s making of, and intent to release, the inflammatory documentary was the motive for Defendant's attempt to hire someone to murder J.E. Defendant acknowledges that some discussion of the documentary is admissible based on the government's motive theory, but he challenges the scope of the testimony that should be allowed.

The Court agrees that, given the government's theory regarding motive, the contents of the documentary are, to some degree, inextricably intertwined with the merits of the case. They, therefore, are not subject to exclusion under Rule 404(b).[1] However, this does not mean that it is appropriate for the government to elicit voluminous detailed information about the allegations made in the documentary. If the government believes that it is plausible that the contents of the documentary are so damaging to Defendant that Defendant was willing to have J.E. killed as a result, it suggests that revelation of the contents to the jury would present a strong likelihood of unfair prejudice to Defendant. Therefore, the relevance of the documentary to

---

[1] The Court does not reach the government's alternative argument that the documentary contents are admissible under Rule 404(b)(2) as motive evidence. That said, while the literal language of Rule 404(b)(2) suggests that the material could be admitted under that Rule, in this case, it is the revelation of the prior bad acts in the documentary that may be relevant to motive, not the bad acts themselves. Given that the evidence is inextricably intertwined with the case, the Court need not decide if this distinction makes a difference.

2

motive must be carefully balanced with the serious risk of unfair prejudice.

While the Court rejects Defendant's approach of limiting the evidence to certain less-inflammatory topics, the government must lay a foundation that Defendant was aware that a *specific* allegation was included or was to be included in the film.  That is, the government cannot elicit testimony on the entire documentary based on vague testimony that Defendant was generally aware of the topics covered in the documentary.  Nor is it appropriate for the government to elicit details related to bad acts allegedly committed by Defendant based on speculation that Defendant might have been concerned that such details might be in the documentary.

There will be no discussion of the evidence supporting the accusations made or any indication of the truth or falsity of the accusation in the government's case-in-chief.  The truth of the allegations in the documentary is either irrelevant or has so little relevance as to be greatly outweighed by the enormous chance of unfair prejudice and the possibility of travelling down a path of a "minitrial" on the documentary's allegations.

The Court is aware that the effectiveness of the documentary's presentation is relevant to the amount of damage it might do to Defendant and, therefore, his motive.  The Court also recognizes that the details presented by the documentary are relevant to its effectiveness.  However, the government does not assert that Defendant ever saw the documentary itself.   The government argues only that Defendant saw the trailer and was played interview excerpts over the phone on a recorded call.  Given that the presentation of the material – and potentially Defendant's knowledge of who had stated the information in the documentary – is relevant to Defendant's feelings about the film, the Court finds that it is appropriate to allow the trailer and the one hour, eight-minute call to be played for the jury.[2]

---

[2] Given that the final portion of the call is the audio from the trailer, there will be no need to play that part of the recording if the trailer is also played.

Assuming that a proper foundation can be laid by the government that Defendant viewed and listened to the material, this will allow the jury to see and hear precisely what Defendant is purported to have seen and heard. The Court does not intend to allow any further testimony about the topics contained within the trailer and the call.[3]

Finally, government counsel and witnesses are to refer to the content of the documentary as "accusations," "allegations," or some similar term at all times. There is to be no implication that the material presented in the documentary is evidence of past bad acts or is true. An appropriate instruction will be given regarding the relevance and proper consideration of this evidence both at the time the evidence is presented and in the final jury instructions.

IT IS SO ORDERED.

Date: October 17, 2023

Dale S. Fischer
United States District Judge

---

[3] The government has argued that Defendant's interviews with J.E. provide a foundation for examining any matters discussed in those interviews. But this argument is not consistent with the government's theory of relevance. If Defendant sat for interviews with J.E. for the making of the documentary, Defendant would have expected J.E. to use those interviews in the documentary. Given this, the connection between the use of Defendant's interviews – or information provided in them – and Defendant's motive to have J.E. killed is, at best, attenuated and is outweighed by a strong likelihood of unfair prejudice.