# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>          v.<br><br>FEREIDOUN KHALILIAN,<br>    Defendant. | 2:23-cr-331-DSF<br><br>Order re J.E. Mental Health Evidence and Alleged Witness Tampering Evidence (Dkt. 103) |

The government has moved to exclude evidence of alleged victim J.E.'s purported mental health conditions and to admit evidence of alleged witness tampering by Defendant.

It is the Court's current understanding that the defense intends to examine J.E. regarding statements J.E. made in September 2023 about his mental health in a state court criminal proceeding relating to disability benefits fraud. See Dkt. 113 at 5. In a letter to the court, J.E. blamed his criminal actions, at least in part, on mental health issues he was having. While J.E. claimed in the letter to have his issues under control, any mental health issues that J.E. discussed were close enough in time that they are an appropriate matter for cross-examination.[1]  "Courts have long recognized the impeachment value of evidence that a government witness has a severe illness, such as schizophrenia, that dramatically impaired his ability to perceive and

---

[1] The Court has relatively little information on the underlying matter, but it appears that J.E. was charged in state court in 2018.

tell the truth." Gonzalez v. Wong, 667 F.3d 965, 983 (9th Cir. 2011) (simplified).[2]

The government now suggests that it may not call J.E. in its case-in-chief and argues that Defendant cannot call J.E. for the purpose of impeaching him. Based on the information that the Court has at this time, there is no reason to believe that, if Defendant were to call J.E., that he would call J.E. for the primary purpose of impeachment rather than for other substantive reasons relating to his case.

Regarding the witness tampering evidence, to the degree that the jury finds that Defendant was involved with an attempt to improperly influence M.S.'s testimony, this conduct is relevant to Defendant's consciousness of guilt. By a preponderance of the evidence, the Court is also satisfied based on both the recorded statements of the alleged co-conspirators and other evidence – e.g., Defendant's own statements, Defendant's use of other prisoners' PINs – that there was a conspiracy,[3] which included Defendant, to influence M.S.'s testimony, and that the statements at issue were made in furtherance of the conspiracy.

While a defendant's custodial status should typically be kept from the jury, Defendant's custodial status is too intertwined with the details of the witness tampering allegations to be excluded. The fact that Defendant is incarcerated is key to explain his use of other prisoners' PINs when making phone calls and his need to use associates and family members to talk to M.S., rather than simply doing it himself. A limiting instruction can be given to eliminate any

---

[2] J.E.'s letter does not specify his mental health condition, but it suggests that J.E. may have been suffering from delusions, paranoia, or both.

[3] For the purposes of Rule 801(d)(2)(E), "the common enterprise need not have an illegal objective." United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988). Therefore, it is not relevant for the purposes of the Rule whether Defendant and his associates were sincerely trying to persuade M.S. to "tell the truth" or if they were knowingly encouraging M.S. to lie.

unfair prejudice that might result. The parties should attempt to agree on a limiting instruction, or provide separate proposed instructions.

    IT IS SO ORDERED.

Date: October 23, 2023

                                        Dale S. Fischer
                                        United States District Judge