CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
FEREIDOUN KHALILIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>FEREIDOUN KHALILIAN,<br><br>　　　　　Defendant. | Case No. 2:23-CR-331-DSF<br><br>**DEFENDANT'S MEMORANDUM OF LAW RE: VENUE** |

## I. INTRODUCTION

Defendant Fereidoun Khalilian requests that the Court instruct the jury on the theory of venue that was alleged by the grand jury in this case.[1] The indictment alleges that "in Los Angeles County, within the Central District of California," Mr. Khalilian "knowingly used facilities of interstate and foreign commerce, specifically, a telephone and the Internet, with the intent that the murder of [Juan Esco] be committed." ECF 5. But during trial, the government did not introduce any evidence that Mr. Khalilian was present in the Central District of California on March 16, when the alleged "murder call" occurred, or any other days reasonably near then. Instead, the government pivoted to a new theory of venue: that venue is proper in this district because the "murder" of Mr. Esco was to take place in Los Angeles.

The government's argument is wrong twice over. First, the government cannot change the theory of venue alleged in the indictment. To introduce an entirely new theory of venue at trial would amount to a constructive amendment of the indictment—something that is impermissible under settled law and would inject reversible error into this case.

---

[1] The arguments in this brief apply equally to Mr. Khalilian's Rule 29 motion for a judgment of acquittal as it pertains to venue. For the reasons presented in this brief, the Court should grant the Rule 29 motion. Per counsel's notes and memory, the government did not present any evidence at trial that would establish either theory of venue discussed in this brief: that Mr. Khalilian was in the Central District of California when he communicated with Mr. Sherwood, or that the communications at issue originated from, passed through, were received, or were orchestrated from this district. The government has therefore not offered sufficient evidence from which the jury could sustain a finding of venue. However, given the complexity of the communications-transit evidence, the Court may wish to reserve ruling on motion per Rule 29(b) until after trial when the transcripts may be reviewed.

Separately, although Mr. Khalilian has presented this briefing with respect to venue at the Court's request, ECF 129, he wishes to make clear that he maintains his position that the Rule 29 motion should be granted as to all elements because the government failed to carry its burden of proving the charge.

1

But there is also a second flaw in the government's newfound venue theory: Mr. Esco's location is irrelevant to the issue of venue. Although the government has colloquially referred to the charge as "murder for hire," the crime Mr. Khalilian has actually been charged with is "usi[ing] facilities of interstate and foreign commerce . . . with the intent that the murder of victim [Juan Esco] be committed." ECF 5; *see* 18 U.S.C. § 1958(a).

Venue is proper only in the district where the "essential conduct elements" of the offense occurred. *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). Here, the essential conduct element is the use of the interstate and foreign commerce facilities. As the Ninth Circuit has held with respect to the similarly structured wire fraud statute, venue is therefore proper only in the district where Mr. Khalilian's alleged use of the interstate commerce facilities "originated, passed through, or was received, or from which it was orchestrated." *Id.*

Accordingly, if the Court disagrees that the government is limited to the theory of venue alleged in the indictment, it should, at a minimum, instruct the jury that it must find that the alleged communications between Mr. Khalilian and Mr. Sherwood originated, passed through, were received, or were orchestrated from this district.

## II. ARGUMENT

### A. The Court Should Instruct the Jury on the Theory of Venue Alleged in the Indictment

Venue is a question that is properly submitted to the jury, and a venue instruction must normally be given when the defendant requests one. *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012). Mr. Khalilian respectfully requests that the Court give the proposed instruction attached as **Exhibit A**, which instructs the jury on the theory of venue alleged in the indictment: that Mr. Khalilian was present in the Central District of California when he used the facilities of interstate and foreign commerce at issue in this case.

2

      The Constitution precludes trial on felony charges absent indictment by a grand jury. U.S. CONST., amend. V; *Stirone v. United States*, 361 U.S. 212, 215 (1960). Once the grand jury returns an indictment, only the grand jury may broaden it through amendment. *Id.* at 215-16. Because the grand jury has the exclusive prerogative to finally determine the charges, neither a prosecutor nor a judge can alter those charges to conform to what he or she thinks the grand jury should or might have done. *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014).

      An impermissible constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court. *Id*. at 1190. Put another way, a constructive amendment occurs where either "there is a complex of facts presented at trial distinctly different from those set forth in the charging instrument" or "the crime charged in the indictment was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (internal quotation marks and brackets omitted). That deprives the defendant of his right to be tried only on charges that have passed the scrutiny of the grand jury. *United States v. Jingles*, 702 F.3d 494, 501 (9th Cir. 2012). A constructive amendment is a serious error that "typically mandates reversal" on appeal. *Stirone*, 361 U.S. at 217-18; *Ward*, 747 F.3d at 1189.

      Here, the indictment alleges that "in Los Angeles County, within the Central District of California," Mr. Khalilian "knowingly used facilities of interstate and foreign commerce, specifically, a telephone and the Internet, with the intent that the murder of [Juan Esco] be committed." ECF 5. Put simply, the indictment alleges that Mr. Khalilian was present in Los Angeles County when he engaged in the alleged communications with Mr. Sherwood that are at the center of this case. Because Mr. Khalilian's presence in the district is the basis for venue that the grand jury found, that is the theory on which the jury must be instructed. To instruct the jury on a theory of venue not alleged in the indictment (and of which Mr. Khalilian lacked notice) would amount to an improper

constructive amendment and inject reversible error into this case. *Stirone*, 361 U.S. at 217-18; *Ward*, 747 F.3d at 1189.

Accordingly, Mr. Khalilian requests that the Court give the proposed jury instruction attached as **Exhibit A**. The instruction is based on Ninth Circuit Model Instruction 6.32 (Venue), with modifications to conform to the theory of venue alleged in the indictment.

**B.   At a Minimum, the Court Should Instruct the Jury that It Must Find that the Use of Interstate Commerce Facilities Originated, Passed Through, Was Received, or Was Orchestrated from this District**

Even if the Court were to conclude that the government could alter the theory of venue alleged in the indictment, it should, at a minimum, instruct the jury that it must find that the alleged March 16 communications between Mr. Khalilian and Mr. Sherwood originated, passed through, were received, or were orchestrated from this district. *See Pace*, 314 F.3d at 349. The government's position that Mr. Esco's location can establish venue is incorrect. Failure to properly instruct the jury on this point would create a serious risk that the jury would mistakenly find venue based on Mr. Esco's presence in Los Angeles—a fact irrelevant to the venue analysis.

The Venue and Vicinage Clauses of the Constitution protect the right to a trial by an impartial jury "of the State and the district wherein the crime shall have been committed." U.S. CONST., amend. VI; *see also* U.S. CONST., art. III, sec. 2 ("The Trial of all Crimes . . . shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . ."); Fed. R. Crim. P. 18.

The proper venue for a charge on depends "the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998). The "nature of the crime" is defined by the "'essential conduct elements' of the offense." *Pace*, 314 F.3d at 349 (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)). Put simply, the focus is on the conduct that constitutes the offense.

In *Pace*, the Ninth Circuit applied this test to the federal wire fraud statute, 18 U.S.C. § 1343. Wire fraud provides a useful analogy to § 1958(a) because although it generally is conceived of as relating to a "scheme to defraud," the actual crime centers on interstate wires. Hence, in looking to the "gist and crux" of the wire fraud statute, the Ninth Circuit held that the "essential conduct" prohibited was "the misuse of the wires." *Pace*, 314 F.3d at 349. Venue was therefore proper only in the district where the misuse of the wires occurred—that is, the district where the wire transmission "originated, passed through, or was received, or from which it was 'orchestrated.'" *Id.*

In reaching this conclusion, the Ninth Circuit rejected the government's broader view that venue was proper anywhere the fraudulent scheme was concocted. *Id.* The Court explained that although a fraudulent scheme may have been an element of the crime, "it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes the prohibited conduct." *Id.* It was therefore that conduct that was the relevant focus for venue. *Id.*; *see also United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011) ("Venue is not proper when all that occurred in the charging district was a circumstance element that occurred after the fact of an offense begun and completed by others.") (cleaned up).

The reasoning of *Pace* compels the same result here. As charged against Mr. Khalilian, § 1958(a) prohibits the use of interstate commerce facilities with intent that a murder be committed for pecuniary value:

> Whoever . . . uses . . . any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay anything of pecuniary value . . . shall be fined under this title or imprisoned for not more than ten years, or both . . .

18 U.S.C. § 1958(a).[2]

The structure of this statute is materially indistinguishable from the wire fraud statute the Ninth Circuit considered in *Pace*: both statutes criminalize the use of interstate commerce facilities (or the wires) with improper intent. As with wire fraud, then, the "essential conduct element" prohibited by § 1958(a)—the "gist and crux" of the crime—is the misuse of interstate commerce facilities. *See Pace*, 314 F.3d at 349. Venue is therefore proper only in the district where the misuse of such facilities "originated, passed through, or was received, or from which it was 'orchestrated.'" *Id*. The location of the intended victim is irrelevant.

Accordingly, if the Court is not inclined to limit the government to the theory of venue alleged in the indictment, Mr. Khalilian respectfully requests that the Court give the alternative proposed jury instruction attached as **Exhibit B.** The instruction is based on Ninth Circuit Model Instruction 6.32 (Venue), with the first paragraph modified to instruct the jury, following the Ninth Circuit's decision in *Pace*, that it must find that Mr. Khalilian's use of the telephone and internet originated, passed through, was received, or was orchestrated from the Central District of California.

Under the circumstances of this case, the model instruction's first paragraph—without Mr. Khalilian's proposed modifications—would be insufficient to convey to the jury what the government must prove to establish venue. The model instruction speaks only in very general terms, stating that the jury must find that "some act in furtherance of the crime charged" took place in the district. Model Instruction 6.32. Because the government has repeatedly referred to the charge as "murder for hire" in front of the jury, there is a serious risk that the jury will mistakenly believe that the crime is the intended "murder" and that the location of the "murder" can establish venue. To avoid this confusion, the Court should specifically instruct the jury on what it must find under the

---

[2] The statute also enumerates other crimes that have not been charged against Mr. Khalilian and are therefore not relevant to the venue analysis. *See Cabrales*, 524 U.S. at 6–7 (explaining that the venue inquiry turns on the "nature of the crime alleged").

6

Ninth Circuit's decision in *Pace*: that Mr. Khalilian's alleged wrongful use of interstate commerce facilities originated, passed through, was received, or was orchestrated from this district. *Pace*, 314 F.3d at 349.

### III. CONCLUSION

For the foregoing reasons, Mr. Khalilian respectfully requests that the Court give his proposed venue instruction or grant his Rule 29 motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 28, 2023      By  /s/ *Adam Olin*
JONATHAN C. AMINOFF
ADAM OLIN
Deputy Federal Public Defenders
Attorneys for FEREIDOUN KHALILIAN