CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
FEREIDOUN KHALILIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FEREIDOUN KHALILIAN, <br><br> Defendant. | Case No. 2:23-CR-331-DSF <br><br> **DEFENDANT'S SECOND MEMORANDUM OF LAW RE: GOVERNMENT'S REQUEST TO REOPEN** |

## I. INTRODUCTION

Trial is not a test run to see how things go and then adjust after the close of evidence. But the government's memorandum ignores recent Ninth Circuit authority cautioning courts against reopening in order to ask the Court to: (i) permit it to conduct a do-over of Agent Moore's testimony now armed with a better understanding of the defense; and (ii) offer legally irrelevant venue evidence after having offered no justification for its earlier failure to do so. The Court should maintain the regular course of trial, reject the government's request for a fourth examination of Agent Moore, and proceed to closing argument as previously advised the jury.

## II. ARGUMENT

### A.   The Government Has Offered No Justification to Reopen

The government's memorandum, in asserting that the Ninth Circuit has "rarely" found reopening testimony to be improper, omits both *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013) and *United States v. Orozco*, 764 F.3d 997 (9th Cir. 2014), which appear to be the Ninth Circuit's most recent published decisions[1] on the matter. Together they illustrate that a party needs to offer an adequate reason for the "failure to offer evidence at the proper time," *id.*, and that being surprised by a defendant's defense is not a basis to reopen, *Hernandez-Meza*, 720 F.3d at 765.

The Ninth Circuit's decision in *Hernandez-Meza* resolves this extraordinary request. In an illegal reentry case, after the parties had both rested, the defendant requested that the court instruct the jury on a derivative citizenship defense. 720 F.3d at 763. The district court then granted the government's request to reopen in order to offer the defendant's mother's naturalization certificate which would defeat the defense. *Id.* In reversing the district court for an abuse of discretion, the Ninth Circuit rejected the government's argument that its "surprise[]" at the defense provided a basis to reopen. *Id.*

---

[1] The government's memorandum fails to note that *United States v. Moreno*, 243 F.3d 551 (9th Cir. 2000) (Table), upon which it relies, is an unpublished memorandum decision that is both uncitable given its age, 9th Cir. L.R. 36-3, and owed no deference.

1

at 765. The Ninth Circuit instead held that absent an independent obligation to disclose a defense, a defendant is "entitled to remain silent as to what defense he will present, and the government must anticipate any issues he might raise." *Id.*

This is the precise scenario in which the government finds itself here. There is no obligation to give notice of a defense challenging venue, nor a defense that there is a lack of evidence corroborating the star witness's account; these are basic attacks the government is expected to anticipate.[2] Given the government's conspicuous absence of a justification for its failure to offer the proffered evidence during its three times questioning Agent Moore, the Court should reject the request on this basis alone.

**B.    There Is Nothing Misleading in Agent Moore's Testimony Warranting Reopening**

But the Court should also reject the request based on the substance of the proffered testimony. The government's memorandum concedes Agent Moore's testimony is not misleading. ECF No. 132 at 1 n.2. That should end the matter. But the government curiously pivots to arguing that it was instead the government's own questions that were misleading. *Id.* It is difficult to imagine how: the government asked a series of questions regarding calls occurring on March 16, 2023, to which Agent Moore gave accurate answers. Ex. A (Reporter's Rough Transcript). Instead, it appears that the government simply wishes it had asked different questions. But counsel in all trials invariably wish their examinations had gone better and would ask questions differently were they given a mulligan. That is not a basis to depart from the orderly course of trial and reopen the case.[3]

---

[2] To the contrary, the Ninth Circuit has held that when the indictment alleges a theory of venue that would be valid if proven, as the indictment did here, the defendant cannot raise the issue of venue until after the government has rested its case. *United States v. Ghanem*, 993 F.3d 1113, 1120 (9th Cir. 2021)

[3] The government's memorandum also misstates the record in stating that the parties rested after re-cross. The parties rested after the government's re-re-direct, *i.e.*, Mr. Khalilian did not request to re-re-cross Agent Moore, and the portion of rough transcript in Exhibit A reflects the final testimony at trial. The government therefore

2

### C. The Government's Proffered Venue Evidence Is Legally Irrelevant

The Court should also decline to exercise its discretion to reopen when the proffered evidence and testimony would do nothing to fix its lack of proof of proper venue. The government's memorandum is oddly silent on this point, simply requesting reopening in order to offer "testimony" from Agent Moore. *See, e.g.*, ECF No. 132 at 1 ("It would ask … Agent Moore, a limited number of questions."); *id.* at 4 ("If permitted to reopen, the government would seek testimony from Special Agent Moore, the witness who testified most recently before the jury."). However, the exhibits demonstrate that any testimony—assuming it even relates to the exhibits—would not do anything to establish venue.

The government asserts Exhibit A is a WhatsApp call log between Mr. Khalilian and Mr. Sherwood for March 17, 2023.[4] Assuming the government is trying to establish venue through these calls,[5] the exhibit fails to do so. All but one of the calls occurred after Mr. Khalilian received the photo of Mr. Esco's "corpse," and thus believed Mr. Esco to have been killed. *See* Gov't Tr. Ex. 28 (reflecting a CashApp payment at 3:39 p.m. on March 17, 2023 that the government asserts was made following Mr. Sherwood telling Mr. Khalilian that Mr. Esco had been killed earlier). And the one remaining call took place when Mr. Sherwood was not in the district as illustrated by the government's own proffered exhibit. *See* Amended Gov't Ex. B (ECF No. 134-1 at 4) (comprising a text from Mr. Sherwood to Mr. Khalilian on March 17, 2023 stating that he was "leaving at 430 pst to head to La"). There is no dispute that the use of the interstate commerce facilities must take place prior to the presumed killing to violate § 1958. *See, e.g.*, ECF

---

cannot claim it was caught flatfooted with no opportunity to respond to Mr. Khalilian's questions.

[4] It is unclear how the government would establish that the exhibit accurately reflects Mr. Sherwood's WhatsApp call log without calling him, which is not part of the request to reopen.

[5] Mr. Khalilian maintains venue can be based only on Mr. Khalilian's presence in the district as described in his memorandum re: venue, ECF No. 130, but addresses potential additional venue bases here to the extent the Court permits the government to depart from the theory of venue alleged in the indictment.

<a />

No. 111 at 4 (Gov't Tr. Brief) ("In order to satisfy the second element, the parties agree that defendant must have used the interstate commerce facility before he believed the murder was complete."). Hence, all of these calls took place after the offense was completed and cannot establish venue.

Exhibit B fares no better. It appears to be a compilation of text messages between Mr. Sherwood and Mr. Khalilian spanning from a few days after the staged killing and June 2023. Given the government's wholesale failure to explain the relevance of these messages, either in its memorandum or in response to emails requesting clarification, Mr. Khalilian can only guess they in some way relate to an attempt to establish venue through Mr. Sherwood's presence in the district. But as described above, these contacts took place after the completion of the offense and therefore cannot establish venue.

Mr. Khalilian would moreover suffer prejudice were the Court to reopen in order to permit the government to attempt to satisfy venue through Mr. Sherwood's presence given that the indictment alleged venue based on the location of Mr. Khalilian. The defense had no notice before trial that Mr. Sherwood's location would be of any relevance and thus had no reason to investigate his whereabouts. The Court should not permit the government to establish venue based on a theory the government did not come up with until after both sides had already rested their case.

* * *

Neither of the proffered exhibits would address the flaw in the government's case, and the government has offered no legitimate justification for having failed to offer them earlier at trial. Hence, the Court should reject the government's request to reopen.

### III. CONCLUSION

For the foregoing reasons, Mr. Khalilian respectfully requests that the Court deny the government's request to reopen its case-in-chief.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 29, 2023        By  /s/ Adam Olin
                                   JONATHAN C. AMINOFF
                                   ADAM OLIN
                                   Deputy Federal Public Defenders
                                   Attorneys for FEREIDOUN KHALILIAN