E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMIAH LEVINE (Cal. Bar No. 288377)
SARA VARGAS (Cal. Bar No. 313370)
Assistant United States Attorneys
Violent & Organized Crime Section
      1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2400
      Facsimile: (213) 894-3713
       E-mail:  Sara.Vargas@usdoj.gov
                Jeremiah.Levine@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>FEREIDOUN KHALILIAN,<br>  aka "Prince Fred,"<br>  "Fred,"<br><br><br>       Defendant. | No. 23-CR-331-DSF<br><br>GOVERNMENT'S MEMORANDUM OF LAW<br>REGARDING VENUE |

Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Jeremiah Levine and
///

i

Sara Vargas, hereby files its brief regarding venue.

Dated: October 29, 2023          Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                    /s/ Jeremiah Levine
                                 JEREMIAH LEVINE
                                 SARA VARGAS

                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.    INTRODUCTION....................................................1

II.   BACKGROUND......................................................2

III.  FACTS..........................................................3

IV.   LEGAL STANDARD.................................................4

V.    ARGUMENT.......................................................7

      A.    The Indictment Does Not Allege that Defendant Was
            Physically in the Central District of California When
            He Committed the Charged Offense........................8

      B.    The Supreme Court's Rodriguez-Moreno Decision Places
            Venue in the Central District of California.............9

      C.    The Venue Restrictions of United States v. Pace Do Not
            Apply because Wire Fraud is Dissimilar from Murder for
            Hire...................................................12

      D.    Venue Lies in the Central District of California Even
            if Pace Applies........................................13

      E.    Steps to Address Venue.................................14

1

**TABLE OF AUTHORITIES**

2

3

Cases

Armour Packing Co. v. United States,

   209 U.S. 56 (1908) ............................................... 6

Hyde v. United States,

   225 U.S. 347 (1912) ............................................ 11

Palliser,

   136 U.S. 257 (1890) ............................................. 6

Smith v. United States,

   599 U.S. 236 (2023) ...................................... 7, 8, 16

Stirone v. United States,

   361 U.S. 212 (1960) ......................................... 1, 8

United States v. Anderson,

   328 U.S. 699 (1946) ............................................. 4

United States v. Candella,

   487 F.2d 1223 (2d Cir. 1973) ................................... 14

United States v. Doss,

   630 F.3d 1181 (9th Cir. 2011) ................................ 1, 8

United States v. Ghanem,

   993 F.3d 1113 (9th Cir. 2021) .................................. 16

United States v. Johnson,

   323 U.S. 273 (1944) ...................................... 5, 6, 14

United States v. Muhammad,

   502 F.3d 646 (7th Cir. 2007) .................................... 5

United States v. Pace,

   314 F.3d 344 (9th Cir. 2002) ............................... 12, 13

iv

United States v. Peppers,

  697 F.3d 1217 (9th Cir. 2012) ...................................... 9

United States v. Powell,

  498 F.2d 890 (9th Cir. 1974) ....................................... 7

United States v. Ramirez,

  420 F.3d 134 (2d Cir. 2005) ...................................... 14

United States v. Reed,

  773 F.2d 477 (2d Cir. 1985) ....................................... 5

United States v. Rodriguez-Moreno,

  526 U.S. 275 (1999) ......................................... 4, 5, 9

United States v. Salinas,

  373 F.3d 161 (1st Cir. 2004) ....................................... 5

United States v. Stephenson,

  895 F.2d 867 (2d Cir. 1990) ............................... 6, 10, 13

United States v. Suarez-Rosario,

  237 F.3d 1164 (9th Cir. 2001) ................................ 14, 15

Statutes

18 U.S.C. 1951(a) .................................................... 8

18 U.S.C. 3237(a) ............................................ 9, 10, 12

18 U.S.C. § 1343 .................................................... 15

18 U.S.C. § 1958(a) ........................................ 4, 7, 12, 13

Rules

Federal Rule of Criminal Procedure 18 ........................... 9, 12

Federal Rule of Criminal Procedure 29 .............................. 5

1

2                    **MEMORANDUM OF POINTS AND AUTHORITIES**

3  **I.   INTRODUCTION**

4          Defendant is charged with violating 18 U.S.C. § 1958(a), which

5  prohibits the use of interstate commerce facilities in the commission

6  of murder-for-hire.  Venue lies in the Central District of California

7  because defendant used interstate commerce facilities to direct his

8  bodyguard to murder a victim in the Central District of California;

9  because as a result of defendant's request, the bodyguard used

10  interstate commerce facilities to contact the victim in the Central

11  District of California; because after defendant's murder request, the

12  bodyguard immediately traveled to the Central District of California,

13  from which he continued communicating with defendant about the

14  murder; and because, as a result of defendant's murder request, the

15  victim sent pictures falsely showing his death from the Central

16  District to the bodyguard, who sent them to defendant, which caused

17  defendant to pay the bodyguard for murder.

18          The plain language of the indictment is in accord with the above

19  venue theory.  The indictment alleges that the crime happened within

20  the Central District, not that defendant was physically here.  Where,

21  as here, an indictment is susceptible to a "more forgiving"

22  interpretation, it is appropriate to adopt that interpretation.  See

23  United States v. Doss, 630 F.3d 1181, 1191 (9th Cir. 2011); see also

24  Stirone v. United States, 361 U.S. 212, 218 (1960) (recognizing that

25  a constructive amendment claim may fail where an indictment is "drawn

26  in general terms").  The indictment says that defendant used

27  interstate communications with the intent that victim Juan Esco be

28

                                   1

murdered.  That use was within the Central District for all the
reasons listed above, including that defendant caused Sherwood to
call the Central District and communicated with Sherwood about the
murder while Sherwood was in the Central District.

## II.   BACKGROUND

On October 27, 2023, defendant moved for a judgment of acquittal
pursuant to Federal Rule of Criminal Procedure 29.  Defendant claimed
that (1) the indictment alleged that defendant was physically in the
Central District of California when he used interstate commerce
facilities to commit murder for hire; and (2) the government had not
put on evidence demonstrating defendant's physical presence in Los
Angeles when he committed the crime.  Further, defendant asserted
that if the government's theory is that defendant was physically
outside the Central District when he committed the crime, then the
government had constructively amended the indictment.  The Court
denied the Rule 29 motion.  It directed the parties to brief
constructive amendment and address any appropriate jury instruction
regarding venue.  The Court then informed the parties that it would
accept briefing about venue in regard to defendant's Rule 29 motion.

The indictment alleges:

Beginning on an unknown date, but no later than on or about
March 16, 2023, and continuing until on or about March 21, 2023,
in Los Angeles County, within the Central District of
California, defendant FEREIDOUN KHALILIAN, also known as ("aka")
"Prince Fred," aka "Fred," knowingly used facilities of
interstate and foreign commerce, specifically, a telephone and
the Internet, with the intent that the murder of victim J.E. be

1       committed in violation of the laws of the State of California as

2       consideration for the receipt of, and as consideration for a

3       promise and agreement to pay, anything of pecuniary value.

4  (Ecf. No. 5.)

5  **III. FACTS**

6       The evidence introduced at trial shows the following: WhatsApp

7  is an instrument of interstate commerce.  Defendant used WhatsApp to

8  contact Michael Sherwood on March 16, 2023.  Defendant hired Sherwood

9  to murder Juan Esco in exchange for $20,000 and a promise of lifetime

10  financial assistance.  At the time of the call, the target of the

11  murder for hire scheme, Esco, was in Los Angeles, California.  The

12  government did not introduce evidence regarding defendant's location

13  at the time of the March 16 communications[1]; Sherwood was in Las

14  Vegas, Nevada during the communications.  On March 16, 2023, Sherwood

15  called Esco in Los Angeles by phone to warn him of the murder plot

16  but could not reach him.  On March 17, 2023, Sherwood successfully

17  reached Esco by phone to warn him.  On that call, Esco and Sherwood

18  agreed to contrive photographs falsely depicting Esco's murder.  That

19  same day, Esco contrived the murder photos at his apartment in Los

20  Angeles.  He used his phone to send the photos of the fake murder

21  scene to Sherwood.  Also on March 17, at 3:39 PM, Sherwood sent the

22  photos to defendant, and received in return a $3,000 payment for the

23  murder from defendant by CashApp.

24       Sherwood testified that he traveled to Los Angeles and was

25  present here from March 17 to March 19, 2023, for a family event

---

27       [1] The government believes that defendant was in Paris when he

28  ordered Sherwood to murder Esco.  That fact is not in evidence and
was disclosed to the defense on October 29, 2023, two days after the
government received confirmation of defendant's travel itinerary.

unrelated to defendant's murder request.  On March 16, 2023, Sherwood sent a screenshot of his travel reservations to defendant as proof that he would commit the murder in Los Angeles.  In the evening of March 16, at 9:31 PM, defendant sent Sherwood another $3,500.  Since that payment was late in the evening on a day Sherwood testified that he was in Los Angeles, the jury could reasonably infer that Sherwood was in the Central District when he received the payment.[2]  On March 21, 2023, Esco reported to law enforcement the plot to kill him by visiting the FBI's Los Angeles field office.

## IV.   LEGAL STANDARD

The Supreme Court has formulated guidelines for determining criminal venue.  In the absence of a specific venue provision in the charging statute,[3] "the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  <u>United States v. Anderson</u>, 328 U.S. 699, 703 (1946).  In performing this inquiry, "a court must identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  <u>United States v. Rodriguez-Moreno</u>, 526 U.S. 275, 279 (1999).

"Although the focus of this test is on the conduct comprising the offense, the Supreme Court has rejected the so-called 'verb test' -- the notion that action verbs reflected in the text of the statute

---

[2] The government believes that Sherwood testified that the $3,500 was part of the $20,000 he was promised for murder, but cannot be certain without the transcript. Even if Sherwood did not say that, the jury could infer that the payment was for murder because (1) defendant promised Sherwood $20,000 for a murder just days earlier; and (2) defendant believed Sherwood had completed the murder and had not yet paid him in full.

[3] The charged statute, 18 U.S.C. 1958(a) does not have a specific venue provision.

1   should be 'the sole consideration in identifying the conduct that

2   constitutes an offense.'"  United States v. Salinas, 373 F.3d 161,

3   164 (1st Cir. 2004) (quoting Rodriguez-Moreno, 526 U.S. at 280).

4   Rather, this Court should view the "conduct elements comprising the

5   crime through a wider-angled lens."  Id. (citing Rodriguez-Moreno,

6   526 U.S. at 280 n.4).  Applying a rigid "verb test," would unduly

7   limit "the inquiry into the nature of the offense and thereby creates

8   a danger that certain conduct prohibited by statute will be missed."

9   Rodriguez-Moreno, 526 U.S. at 280; accord United States v. Muhammad,

10  502 F.3d 646, 652 (7th Cir. 2007) (recognizing that "there is no

11  single defined policy or mechanical test to determine constitutional

12  venue.  Rather the test is best described as a substantial contacts

13  rule that takes into account a number of factors -- the site of

14  defendant's acts, the elements and nature of the crime, the locus and

15  effect of the criminal conduct, and the suitability of each district

16  for suitable fact-finding") (quoting United States v. Reed, 773 F.2d

17  477, 481 (2d Cir. 1985)).

18      The locus delicti analysis may also consider the effects of a

19  defendant's conduct in another district, when the statute at issue

20  speaks in terms of such effects.  See United States v. Johnson, 323

21  U.S. 273, 275 (1944) (observing that the Constitution permits

22  Congress to "provide that the locality of a crime shall extend over

23  the whole area through which the force propelled by an offender

24  operates.").  For example, prosecutions under the Hobbs Act for

25  obstructing, delaying, or affecting interstate commerce by means of

26  robbery or extortion, 18 U.S.C. 1951(a), may be brought in the

27

28
                                    5

district where the requisite effect on interstate commerce was felt, as well as in the district where the robbery or extortion took place. See, e.g., United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990) ("Venue under the Hobbs Act is proper in any district where interstate commerce is affected or where the alleged acts took place.").  Similarly, an offense involving the use of the mails may constitutionally be prosecuted "in any district from, through, or into which" the materials passed in transit, even if the defendant never possessed the materials in each such district. 18 U.S.C. 3237(a); see In re Palliser, 136 U.S. 257, 266 (1890) (holding, under predecessor version of general venue statute, that an offense committed through the use of the mails could be prosecuted in the district where the letter is received); United States v. Johnson, 323 U.S. 273, 275 (1944) (consistent with the Constitution, "an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district").  A prosecution for illegally accepting transportation of goods from a common carrier at rates less than the carrier's published rates may be brought in any district through which the goods were transported, even if the defendant's only interaction with the carrier was entering into an agreement in a district other than the one in which the prosecution is brought.  See Armour Packing Co. v. United States, 209 U.S. 56, 73-77 (1908).

Federal Rule of Criminal Procedure 18 says that venue lies "in a district in which the offense was committed."  Congress has

elaborated that, for offenses spanning multiple districts, venue lies in any district where the offense began, continued, or ended:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).  Venue need only be proved by a preponderance of the evidence and can be established either directly or circumstantially.  United States v. Powell, 498 F.2d 890, 891 (9th Cir. 1974).  And the finding of a venue defect, "even when styled as a 'judgment of acquittal' under Rule 29" does not preclude retrial because it does not trigger the Double Jeopardy Clause.  Smith v. United States, 599 U.S. 236, 253-54 (2023).

## V.   ARGUMENT

This Court should reject defendant's Rule 29 motion and give the Ninth Circuit's model instruction on venue, Model Criminal Jury Instruction 6.32.  That instruction should read:

> The Indictment alleges that some act or acts in furtherance of the crime charged occurred in the Central District of California.  There is no requirement that all aspects of the crime charged take place here in the Central District of California.  Before you may return a verdict of guilty, however, if that is your decision, the government must convince you that some act in furtherance of the crime charged took place in the Central District of California.
>
> Unlike all the specific elements of the crime charged that I have described elsewhere in these instructions, this fact regarding venue need only be proven by a preponderance of the evidence.  This means the government need only convince you that it is more likely than not that some act in furtherance of the crime charged took place here.

7

1

2

3

4

The government, however, must prove all the offense-specific elements of any crime charged, as I have described elsewhere in these instructions, beyond a reasonable doubt. The lesser standard of preponderance of the evidence only applies to your decision on the issue of venue.

5

6

**A.   The Indictment Does Not Allege that Defendant Was Physically in the Central District of California When He Committed the Charged Offense**

7   Defendant argues that the indictment alleges that he committed

8   murder for hire while physically in the Central District of

9   California. (Dkt. 130 at 2-4.) Defendant claims that the jury must

10   be instructed accordingly in evaluating venue and that any other

11   approach would be a constructive amendment of the indictment. (Id.)

12   Defendant misreads the indictment. It alleges that the crime

13   occurred within the Central District of California between March 16

14   and 21, 2023.[4] Defendant construes the indictment as alleging his

15   physical presence in the Central District of California, but the

16   indictment should not be construed so narrowly. Where, as here, an

17   indictment is susceptible to a "more forgiving" interpretation, it is

18   appropriate to adopt that interpretation. See United States v. Doss,

19   630 F.3d 1181, 1191 (9th Cir. 2011); see also Stirone v. United

20   States, 361 U.S. 212, 218 (1960) (recognizing that a constructive

21   amendment claim may fail where an indictment is "drawn in general

22   terms"). That is particularly so where defendant failed to request a

23

24   _____

25   [4] The indictment's language allows for defendant to have committed the crime here, but it does not require him to have been

26   here. A person can use facilities of interstate and foreign commerce that reach into the Central District of California without being

27   here; that is the nature of interstate behavior, which is what the indictment alleges. For example, defendant placed a phone call to

28   Sherwood in Las Vegas, who then called Esco in Los Angeles, thereby using facilities of interstate commerce in the Central District.

1   bill of particulars before trial or raise any claim that the

2   indictment was subject to the narrow interpretation he now advances.

3       The indictment's language, like the law, requires venue in the

4   Central District but does not require that defendant personally have

5   been present here.  As a result, the Ninth Circuit Model Jury

6   instruction regarding venue is appropriate here. United States v.

7   Peppers, 697 F.3d 1217, 1221 (9th Cir. 2012) ("preferred practice is

8   for district courts, where possible, to follow the [Ninth Circuit]

9   model instructions.").

10       **B.**    **The Supreme Court's Rodriguez-Moreno Decision Places Venue**
           **in the Central District of California**

11

12       The statute at issue in this case, 18 U.S.C. § 1958(a), is

13   silent about venue.  The government is not aware of Ninth Circuit

14   authority governing venue in the murder-for-hire context.  As a

15   result, the governing authorities are the Supreme Court's locus

16   delicti test interpreting the Constitution's venue requirement,

17   Federal Rule of Criminal Procedure 18's requirement for prosecution

18   where a crime happened, and Congress's allowance for prosecution in

19   multiple venues under 18 U.S.C. § 3237(a).

20       As stated above, in applying the locus delicti test, the Court

21   in Rodriguez-Moreno said that "a court must identify the conduct

22   constituting the offense (the nature of the crime) and then discern

23   the location of the commission of the criminal acts."  526 U.S. at

24   279.  To determine what conduct constituted the offense, the Court in

25   Rodriguez-Moreno compared the language of the charged statute with

26   the defendant's conduct.  In this case, the charged statute says the

27   following, with the portions shown in bold applying to defendant:

28

> **Whoever** travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or **uses** or causes another (including the intended victim) to use the mail or **any facility of interstate** or foreign **commerce, with intent that a murder be committed in violation of the laws of any State** or the United States as consideration for the receipt of, or **as consideration for a promise or agreement to pay, anything of pecuniary value . . .**

18 U.S.C. § 1958(a).  The statute speaks specifically in terms of the law of the state where the murder would be committed.  That is, the statute contemplates the location of the intended victim.  In fact, whether the statute is violated at all depends on the state where the murder is to occur.  Accordingly, the conduct constituting the offense reaches the victim's location, which was the Central District of California.  See United States v. Stephenson, 895 F.2d at 874 (venue for Hobbs Act includes anywhere that interstate commerce impacted).

Viewing defendant's conduct in light of the statute, when the defendant used the interstate commerce facility, he directed Sherwood to interact with the victim in the Central District.  Defendant's use of the interstate wires therefore reached the Central District.  Defendant's direction was for Sherwood to travel to the Central District to supervise the three hitmen murdering the victim.  Instead, Sherwood interacted with the victim in the Central District by calling him, texting him, and coordinating the staged murder scheme that caused defendant to pay for the murder.  It is true that Sherwood contacted the victim in a different manner than defendant

1    ordered—Sherwood warned the victim instead of murdering him—but the

2    fact remains that Sherwood contacted the victim in the Central

3    District <u>exclusively</u> because of defendant's charged use of an

4    interstate facility.  Sherwood also traveled to the Central District

5    during the time charged in the indictment, and while here,

6    communicated with defendant about the charged crime.[5]

7            Defendant's conduct of using an interstate commerce facility

8    (his phone and the internet) to direct Sherwood to murder the victim

9    in the Central District also harmed Esco here, and caused him to take

10   action here.  In response to Sherwood's outreach that defendant

11   caused, Esco arranged to create photographs of his own death scene.

12   And it is no coincidence that the victim contacted the Los Angeles

13   FBI office: this is where the victim experienced defendant's crime.

14   <u>See Hyde v. United States</u>, 225 U.S. 347, 363 (1912) (finding that

15   where conspiracy agreed to in California and overt act committed in

16   District of Columbia, venue was proper in the District of Columbia

17   because "[i]t is not an oppression in the law to accept the place

18   where an unlawful purpose is attempted to be executed as the place of

19   its punishment, and rather conspirators be taken from their homes

20   than the victims and witnesses of the conspiracy be taken from

21   theirs.")

22           Defendant was fully aware that his intended victim was in the

23   Central District of California, so he cannot argue that venue here is

24   a trap of the unwary.  The evidence shows that defendant believed he

25   _____

26           [5] The evidence indicates that Sherwood may also have received
     payment from defendant while in the Central District.  Sherwood
27   testified that he traveled to the Central District from March 17 to
     March 19, and a screenshot of his hotel reservation beginning March
28   17 is in evidence.  Also in evidence is the fact that defendant paid
     Sherwood $3,500 at approximately 9:31 pm on March 17.

had men watching the victim in Los Angeles, and that he accepted Sherwood's screenshot of his hotel reservation in Los Angeles as proof that Sherwood would be on site to help murder the victim.

### C. The Venue Restrictions of United States v. Pace Do Not Apply because Wire Fraud is Dissimilar from Murder for Hire

The defense argues that the charged offense is similar to wire fraud, and that therefore the venue restrictions of wire fraud apply here.  (Dkt. 130 at 3.)  In wire fraud cases, venue is only appropriate where the interstate commerce facility used for the fraud "originated, passed through, or was received, or from which it was orchestrated."  United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002).  The defense argues that as a result, venue is proper only in the Central District.  (Dkt. 130 at 3.)

Pace does not apply here because the wire fraud statute is not like the murder for hire statute.  The wire fraud statute says, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice [shall be punished].

18 U.S.C. § 1343.  The statutory language never references victims. Nor does it reference the law of the state in which the victim

resides or is present at the time of the offense.  As a result, in examining the gravamen of wire fraud, the court in Pace wrote:

> We have recognized that the nature of a wire fraud offense—the "gist and crux" of the offense—is the misuse of wires.  It is appropriate, therefore, that we interpret the essential conduct prohibited by § 1343 to be the misuse of wires as well as any acts that cause such misuse.

Pace, 314 F.3d at 349 (internal citations omitted).

But the murder for hire statute is different.  It is replete with references to the victim: it references the victim twice and is contingent on the laws of the state where the victim resides.  So the offense conduct is broader too, and includes impact on the victim.  See Stephenson, 895 F.2d at 874 (venue for Hobbs Act includes anywhere that interstate commerce impacted).

### D.  Venue Lies in the Central District of California Even if Pace Applies

Even if this Court were to import into the murder-for-hire statute Pace's wire-fraud requirement of a wiring into, through, or from the Central District, that requirement was satisfied here.  Defendant's charged communication with Sherwood – the murder call - caused Sherwood to use interstate wires to communicate (1) with the victim while the victim was in Los Angeles on and before March 17; and (2) with defendant while Sherwood was in Los Angeles after traveling to Los Angeles on March 17.  Defendant's charged conduct also caused the victim to use wires to send Sherwood the murder photos from the Central District.

Defendant thus "orchestrated" wires both into and out of the Central District.  Pace, 314 F.3d at 349.  Although Sherwood did not

carry out the murder, he acted in the Central District based on defendant's direction nonetheless.  When a defendant's criminal act in one district causes a person to act in another district, venue lies in either.  See United States v. Ramirez, 420 F.3d 134, 143 (2d Cir. 2005) (where defendant made false statement to government in Brooklyn, and unbeknownst to defendant, government sent false statement to Manhattan for processing, venue lay in Manhattan: "Since the offense was begun and completed in different places, it was continuing under § 3237(a) and could thus be prosecuted "in 'the whole area through which force propelled by an offender operates') quoting United States v. Johnson 323 U.S. 273, 275 (1944)); United States v. Candella, 487 F.2d 1223, 1227 (2d Cir. 1973) (where defendant submitted false statement to federal government in Brooklyn, and government sent statement to Manhattan for processing venue lay in Manhattan).  As in Candella and with the false LCA forms in Ramirez, the "force propelled" by the defendant in this case "immediately contemplated" the district in which he was indicted.

### E.   Steps to Address Venue

The government requests that the Court give the model venue instruction set forth above.  The government further requests that the Court permit it to very briefly reopen its case.  Not only does this Court exercise "wide discretion" in allowing reopening but the Ninth Circuit has recognized that one purpose of Rule 29 motions is to alert the Court so that it may allow the government to reopen. United States v. Suarez-Rosario, 237 F.3d 1164, 1167 (9th Cir. 2001).

Separately, as stated at greater length in the government's October 28, 2023, memorandum respectfully requesting to briefly

14

1    reopen evidence (ECF 134), the government also requests that Court

2    reopen evidence briefly to allow evidence regarding venue.  Not only

3    does this Court exercise "wide discretion" in allowing reopening but

4    the Ninth Circuit has recognized that one purpose of Rule 29 motions

5    is to alert the Court so that it may allow the government to reopen.

6    <u>United States v. Suarez-Rosario</u>, 237 F.3d 1164, 1167 (9th Cir. 2001).

7         After the close of evidence, defendant moved for a judgment of

8    acquittal, emphasizing a claimed deficiency of evidence regarding

9    venue.  Specifically, defendant claimed that the indictment alleged

10   that defendant was physically in the Central District when he made

11   the murder phone call, that that is the only theory under which there

12   is venue in this case, and that the government failed to offer

13   evidence regarding defendant's physical presence here.  This was the

14   first time that the defense had raised its theory about the

15   indictment requiring defendant to be here physically, and the first

16   time it raised its venue theory.

17        Because the government received notice of these defense

18   contentions after the close of evidence, the government respectfully

19   requests to reopen evidence.  The evidence the government would seek

20   to admit includes amended exhibits A and B attached to ECF 134, which

21   show Sherwood's communication with defendant while in Los Angeles

22   during the time period specified in the indictment.

23        The government further requests that the Court use the special

24   verdict form attached hereto as Exhibit A.[6]  That form permits the

25   jury to render a decision on venue subject to the correct burden of

---

26        [6] The government contacted the defense on Sunday afternoon to
27   ask its position on the special verdict form. The parties were not
     able to communicate about the issue before the filing deadline for
28   this brief.

proof and, consistent with the Supreme Court's decision in <u>Smith</u>, 599 U.S. 236, ensures that the government will not be precluded from retrying this case in another venue if the jury "acquits" on the basis of an alleged venue defect.   <u>See also</u> <u>United States v. Ghanem</u>, 993 F.3d 1113, 1131 (9th Cir. 2021) (suggesting the propriety of "a special-verdict form requiring a venue finding separate from substantive guilt").   Finally, if the Court grants defendant's Rule 29 motion based on a venue defect, the government requests that the Court make clear in its order that the government may retry defendant after superseding to cure any purported constructive amendment and/or transferring this case to another district for retrial.

# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                    CR No. 23-00331-DSF

       Plaintiff,                            VERDICT FORM

         v.

FEREIDOUN KHALILIAN,


       Defendant.

---

   1.   We, the Jury, unanimously find, by a preponderance of the evidence, that venue is proper here in the Central District of California:

       _____   NO

       _____   YES

  If your answer to Question 1 is NO, do not consider Question 2 below.  If your answer to Question 1 is YES, please answer Question 2.


   2. We, the Jury, unanimously find the defendant FEREIDOUN KHALILIAN *(check one)*:

       _____   NOT GUILTY

       _____   GUILTY

of using the internet or telephone, which are both interstate commerce facilities, in the commission of murder-for-hire.


Dated: _____, 2023, at Los Angeles, California.


                          _____

                          FOREPERSON OF THE JURY