CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
FEREIDOUN KHALILIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FEREIDOUN KHALILIAN,<br><br>　　　　　Defendant. | Case No. 2:23-CR-331-DSF<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S MEMORANDUM OF LAW REGARDING VENUE** |

## MEMORANDUM OF POINTS AND AUTHORITIES

The government now concedes that there is no evidence that Mr. Khalilian was present within the Central District of California when he used interstate and foreign commerce facilities, nor is there any evidence that Mr. Khalilian's communications with Mr. Sherwood originated, passed through, were received, or were orchestrated from this district. *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). Instead, the government's brief discusses various actions by persons other than Mr. Khalilian. But these acts by others are irrelevant to venue for the crime charged: that Mr. Khalilian himself personally used facilities of interstate and foreign commerce within the Central District of California. Accordingly, nothing in the government's brief changes is now readily apparent: the government charged this case in the wrong district.

Given the time constraints, Mr. Khalilian will not attempt to respond to every issue raised in the government's brief and instead focuses only on the most salient points:

*First*, the government presents no reasoned basis for distinguishing § 1958(a) from the wire fraud statute the Ninth Circuit addressed in *Pace*. *Pace* makes clear that venue inquiry turns on the "essential conduct element" of the offense. *See Pace*, 314 F.3d at 349. Just as in *Pace*, the essential conduct element of § 1958(a) is the use of interstate commerce facilities. *See id.* Indeed, that is the only conduct element of the offense. The government's discussion of issues relevant to intent—such as that the intended murder must violate state law—is therefore beside the point.[1] The <u>conduct</u> prohibited by § 1958(a) is the use of interstate and foreign commerce facilities, and the offense is

---

[1] The government's discussion of the use of the word "victim" in § 1958(a) is similarly offbase. Gov't Br. 10. 12–13. The word "victim" is used only in connection with two crimes that have not been charged against Mr. Khalilian: (1) causing the intended victim to travel in interstate and foreign commerce with intent that murder be committed, and (2) causing the intended victim to use the mail or facilities of interstate and foreign commerce with intent that murder be committed. Because the venue inquiry turns on the "nature of the crime alleged," *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998), separate provisions of the statute not charged against Mr. Khalilian have no bearing on the proper venue for this case.

complete once those facilities have been used. Actions taken after the crime has been completed are irrelevant to venue—they have no effect on where the already completed offense can be charged. *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011) ("Venue is not proper when all that occurred in the charging district was a 'circumstance element . . . that occurred after the fact of an offense begun and completed by others.'").

*Second*, the government cannot establish venue (or convict Mr. Khalilian) based on actions taken by others, such as Mr. Sherwood's decisions to call Juan Esco or to travel to the Central District, or Mr. Esco's decision to send the "murder" photo to Mr. Sherwood. *See* Gov't Br. 13. The government has charged Mr. Khalilian with personally using facilities of interstate and foreign commerce in this district. Causing another person to travel or use facilities of interstate commerce are separate crimes with which Mr. Khalilian has not been charged. *See* 18 U.S.C. § 1958(a). Accordingly, neither theory is relevant to venue in this case. Even beyond that, there is no evidence that Mr. Khalilian caused Mr. Sherwood or Mr. Esco to take any of these actions. To the contrary, Mr. Sherwood testified that he traveled to the Central District to attend a family birthday party, not because of anything having to do with Mr. Khalilian. Nor did Mr. Khalilian cause Mr. Sherwood to call Juan Esco in order to conspire with Mr. Esco to stage a fake murder. Mr. Sherwood testified that he took it upon himself to call Mr. Esco, not that Mr. Khalilian instructed him to do so. And of course, Mr. Khalilian did not cause Mr. Esco to send photos of the fake murder scene to Mr. Sherwood—Mr. Sherwood and Mr. Esco devised this scheme on their own. Because Mr. Khalilian has been indicted for his own use of interstate commerce facilities, that is the only conduct relevant to determining venue.

*Third*, the government's discussion of payments sent to Mr. Sherwood has no bearing on venue. Gov't Br. 3–4. As the government itself explained in its trial brief, "the parties agree that defendant must have used the interstate commerce facility before he believed the murder was complete." ECF No. 111 at 4. The reason for this is that the statute speaks in the future tense, requiring the defendant to have the intent that a murder

"be committed." 18 U.S.C. § 1958. Naturally, a defendant cannot intend that a person be murdered if he believes that individual is already dead. There is no dispute that all of the payments the government discusses were sent after Mr. Sherwood informed Mr. Khalilian that Mr. Esco had been killed. *See* Gov't Br. 3–4 (discussing payments sent on the afternoon and evening of March 17, after Mr. Sherwood sent Mr. Khalilian a photo of the "murder" scene). Accordingly, none of these payment transactions can serve as a basis for convicting Mr. Khalilian. And because they cannot be a basis for conviction, they likewise cannot provide a basis for venue. *Stinson*, 647 F.3d at 1204.

*Finally*, Mr. Khalilian objects to the government's proposal to use a special verdict form. "Special verdict forms are generally disfavored in criminal cases," *United States v. El Beialy*, 539 F. App'x 791, 795 (9th Cir. 2013), because they are "thought to disadvantage defendants," *McClinton v. United States*, 143 S. Ct. 2400 (2023) (Alito, J., concurring in denial of certiorari). This case presents no reason to depart from the usual practice of using a general verdict form—indeed, the government has not cited any case in which the court used a special verdict form with a separate question pertaining to venue.[2]

---

[2] The Ninth Circuit's observation in *United States v. Ghanem*, 993 F.3d 1113, 1131 (9th Cir. 2021), that a district court "might consider" using a special-verdict form with a venue question is both dicta and directed to a different situation than the one presented here. The defendant in *Ghanem* failed to challenge a facially apparent venue defect in the indictment before trial but then requested a jury instruction on venue. *Id.* at 1119–20. The Ninth Circuit noted that district courts facing a "similarly muddled posture[]" might consider using a special verdict form in order to "reduce a defendant's incentive to sandbag a venue defect by failing to raise the issue pretrial but then attempting to win an acquittal by later requesting a venue instruction." *Id.* at 1131. But that sandbagging concern is not present here. Mr. Khalilian had no way of challenging the indictment before trial because it alleged a theory of venue that was valid on its face: that he was present in the Central District of California when he used the facilities of interstate and foreign commerce. ECF No. 5; *see Ghanem*, 993 F.3d at 1120 (explaining that when "no venue defect [is] apparent on the face of the indictment . . . the earliest a defendant can raise the issue is in a Rule 29 motion for a judgment of acquittal at the close of the

At a minimum, if the Court decides to use a special verdict form, it should not use the version proposed by the government, which prevents the jury from answering the question concerning Mr. Khalilian's innocence or guilt unless it first concludes that venue is proper. If the jury in the district where the government chose to bring the case believes that Mr. Khalilian is not guilty of the offense charged, Mr. Khalilian is entitled to the benefit of that finding—the government cannot use its own venue mistake to get a second bite at the apple. Accordingly, if the Court is inclined to use a special verdict form, Mr. Khalilian requests that the jury be required to answer both the question relating to venue and the question relating to guilt.

\* \* \*

For the foregoing reasons and those presented in his initial brief, Mr. Khalilian respectfully requests that the Court grant his Rule 29 motion or give his proposed venue instruction, and that the Court deny the government's request for a special verdict form.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 30, 2023    By  /s/ Adam Olin
JONATHAN C. AMINOFF
ADAM OLIN
Deputy Federal Public Defenders
Attorneys for FEREIDOUN KHALILIAN

---

government's case-in-chief."). Because this case does not present the "muddled posture" which the *Ghamen* court was concerned, *Ghanem* provides no basis for using a special verdict form.

4